UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES TAYLOR, III,

    *Plaintiff,*

v.

RICHARD SNYDER,
and KRISTIE ETUE,

    *Defendants.*

_____/

CIVIL ACTION NO. 1:16-cv-14445

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS (Doc. 15)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion To Dismiss, (Doc. 15), be **GRANTED IN PART** and **DENIED IN PART**, and that Plaintiff's Complaint be **DISMISSED** only as to his claims for monetary damages against Defendants in their official capacities.

### II.    REPORT

#### A.    Introduction

Plaintiff James Taylor, III ("Plaintiff")—who proceeds *pro se* and *in forma pauperis*—filed this § 1983 lawsuit on December 21, 2016, against Defendants Richard Snyder and Kristie Etue ("Defendants"). (Doc. 1). After his conviction for Criminal Sexual Conduct in the Second Degree, he "was first subjected to the Sex Offender Registration Act [("SORA")] on September 12, 2008," fourteen years "after [it] had begun in 1994 as a

1

non-public registry maintained solely for law enforcement use, . . . ." (Doc. 1 at 4). Since its genesis, Plaintiff suggests that it "has grown into a byzantine code governing in minute detail the lives of the state's sex offenders, . . . ." (*Id.*). As of 2011, amendments to SORA have subjected Plaintiff "to constant supervision; required [him] to report frequently in person; banned [him] from living or working in many areas; restricted [him] as to when he [could] travel; limited his rights to free speech; hindered [him] from maintaining normal family relationships; identified [him] publicly and falsely as dangerous; and subjected [him] to a vast array of state-imposed restrictions that encompass virtually every facet of his life." (Doc. 1 at 5). Ultimately, he contends the retroactive requirement that he comply with SORA for 25 years or face criminal sanctions "violates the constitutional prohibition on ex post facto laws," violates his "fundamental rights to travel, work, speak, and raise his children," and "also violates the Due Process Clause, because many provisions of SORA 2011 are void for vagueness." (Doc. 1 at 6). In making this argument, he discusses case law from around the country, and draws heavily from language in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), *reh'g denied* (Sept. 15, 2016), which held, among other things, that:

> Michigan's SORA imposes punishment. And while many (certainly not all) sex offenses involve abominable, almost unspeakable, conduct that deserves severe legal penalties, punishment may never be retroactively imposed or increased. Indeed, the fact that sex offenders are so widely feared and disdained by the general public implicates the core counter-majoritarian principle embodied in the Ex Post Facto clause. As the founders rightly perceived, as dangerous as it may be not to punish someone, it is far more dangerous to permit the government under the guise of civil regulation to punish people without prior notice. . . . The retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional, and it must therefore cease.

*Id.* at 705-06; (Doc. 1 at 17-18). He prays for relief in the form of: (1) a declaratory judgment that the retroactive application of SORA 2011 violates the Constitution's prohibition on ex post facto laws; (2) a permanent injunction restraining Defendants from enforcing SORA; and (3) nominal damages. (Doc. 1 at 1, 18).[1] Defendants filed the instant Motion To Dismiss, (Doc. 15), on June 15, 2017, and Plaintiff filed a Response thereto, (Doc. 17), on July 7, 2017. Accordingly, this Motion is ready for report and recommendation.

### B. Motion To Dismiss Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the

---

[1] In Plaintiff's Response, he contends that the present suit is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and not 42 U.S.C. § 1983. (Doc. 17 at 5). He is mistaken. The Declaratory Judgment Act merely authorizes courts to issue relief in the form of declaratory judgments under the proper circumstances, while § 1983 actually creates a private right of action against every "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, . . ." *Accord, e.g.*, *Price v. Caruso*, No. 1:07-CV-117, 2007 WL 1521215, at *1 (W.D. Mich. May 22, 2007) ("Initially, the Court addresses Plaintiff's argument that he is not alleging a claim under § 1983, but rather is alleging claims pursuant to 28 U.S.C. § 2201, . . . [I]t is well established that the federal Declaratory Judgment Act, 28 U.S.C. § 2201 'is procedural only, not substantive, and hence the relevant cause of action must arise under some other federal law . . . . to afford jurisdiction of a declaratory judgment suit.'" (quoting *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984))). Properly construed, Plaintiff's Complaint asserts a § 1983 cause of action.

Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss

can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (finding that the consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new," did not convert the motion to dismiss into a motion for summary judgment).

Because Plaintiff proceeds *in forma pauperis*, his complaint remains subject to *sua sponte* dismissal "at any time" if this Court finds that his complaint is frivolous or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). In addition, federal courts hold an independent obligation to examine their own jurisdiction. *United States v. Hays*, 515 U.S. 737, 742 (1995). Rule 12(h)(3) of the Federal Rules of Procedure provides

5

that, if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

   C.   Analysis

Defendant raises two arguments in the instant Motion To Dismiss: (1) Plaintiff failed to sign his complaint as required under Federal Rule of Civil Procedure 11(a), (Doc. 15 at 1-2); and (2) the Eleventh Amendment bars Plaintiff's claims for monetary damages, (Doc. 15 at 2-4). I discuss each in turn.

   1.   **Eleventh-Amendment Immunity**

The Eleventh Amendment "places a jurisdictional limit on federal courts in civil rights cases against states and state employees," and as such it receives consideration at the forefront of my analysis. *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989). "[A]s when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) (citing *Cory v. White*, 457 U.S. 85, 91 (1982)). But an exception to this rule exists for suits "challenging the constitutionality of a state official's action . . . ." *Id.* at 102. In such cases, the Eleventh Amendment prohibits a federal court from "awarding damages against the state treasury even though the claim arises under the Constitution." *Id.* at 100. This rule would not necessarily bar non-monetary remedies against state officials acting in their official capacity. *Accord Pennhurst*, 465 U.S. at 120; *see also Barachkov v. 41B Dist. Court*, 311 F. App'x 863, 872-73 (6th Cir. 2009) ("It is settled law that '[a] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because

'official-capacity actions for prospective relief are not treated as actions against the State.'" (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989))). It also presents no impediment to recovery against a state official in her *individual* capacity if no qualified immunity is found.

In the instant case, the face of Plaintiff's complaint states that he is suing Defendants in his and her official capacity, respectively. (Doc. 1 at ID 1.) Plaintiff gives no indication that he sues Defendants in their individual capacities, aside from seeking "nominal damages" against Defendants. (Doc. 1 at 1). As a result, we "'must assume'" he sues Defendants in their official capacities only. *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (quoting *Whittington v. Milby*, 928 F.2d 188 (6th Cir. 1991)). His request for monetary damages against Defendants is therefore barred. *E.g.*, *Smith-El v. Steward*, 33 F. App'x 714, 716 (6th Cir. 2002). The Eleventh Amendment does not deprive this Court of jurisdiction, however, as to his claim for non-monetary relief against Defendants.

### 2. Failure To Sign the Complaint

Federal Rule of Civil Procedure 11(a) requires an unrepresented party to sign "[e]very pleading, written motion, and other paper" filed in his lawsuit. If he fails to sign his complaint, "[t]he court must strike" it unless he "promptly correct[s]" the omission. *Id.*; *accord, e.g.*, *Brent v. Snyder*, 783 F.3d 1347 (6th Cir. 2015) ("The signature requirement is mandatory but not jurisdictional."); *Coleman v. United States*, 227 F. Supp. 2d 717, 718 (E.D. Mich. 2002) ("[T]he Court shall not waive the signature requirement of Rule 11(a) of the Federal Rules of Civil Procedure.").

7

Defendants aver that Plaintiff "filed an unsigned complaint on January 26, 2017," and that because the Rule 11(a) "signature requirement is mandatory . . . . the complaint should be stricken or dismissed for the failure to sign his verified complaint." (Doc. 15 at 1-2). This argument is puzzling, however, because the complaint was filed on December 21, 2016, and Plaintiff's signature appears plainly at the end the Complaint, accompanied by a notarized certification of service. (Doc. 1 at 18-19). For this reason, Defendants' argument should fail on this ground.

### D. Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Defendants' Motion To Dismiss, (Doc. 15), be **GRANTED IN PART** and **DENIED IN PART**, and that Plaintiff's Complaint be **DISMISSED** only as to his claims for monetary damages against Defendants in their official capacities.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have

to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 9, 2017             S/ PATRICIA T. MORRIS
                                 Patricia T. Morris
                                 United States Magistrate Judge


### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to James Taylor, III at 3234 Ramond St., Saginaw, MI 48601.

Date: August 9, 2017             By s/Kristen Castaneda
                                 Case Manager

9